1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

Case No. 16-cv-01161-BAS(DHB)

12  MELANIE WILSON,

13                                     Plaintiff,

**ORDER:**

14

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS (ECF No. 4); AND**

15        v.

16  CHRISTOPHER R. HAYS;
    CITY OF SAN DIEGO,

17                                    Defendants.

18

**(2) GRANTING DEFENDANT CHRISTOPHER R. HAYS'S MOTION TO DISMISS (ECF No. 14)**

19

20

21

22        Plaintiff Melanie Wilson commenced this action against Defendants

23  Christopher R. Hays and the City of San Diego on May 13, 2016, alleging violations

24  of her civil rights pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social*

25  *Services of City of New York*, 436 U.S. 658 (1978). This action arises from an

26  incident in December 2013 where Plaintiff alleges Defendant Hays, a San Diego

27  Police Department Officer at the time, sexually battered her after giving her a ride

28  home and then taunted her for an hour and a half. Defendants separately move to

1  dismiss Plaintiff's claims on the ground that they are time barred by the statute of
2  limitations. (ECF Nos. 4, 14.) Plaintiff opposes. (ECF Nos. 5, 15.)

3        The Court finds these motions suitable for determination on the papers
4  submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).
5  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART**
6  the City's motion to dismiss and **GRANTS** Hays's motion to dismiss.

7
8  **I.     BACKGROUND**[1]
9        **A.     Section 1983 Allegations against Defendant Hays**

10       The San Diego Police Department ("SDPD") hired Defendant Christopher R.
11  Hays as a sworn police officer in late 2009 or early 2010. (Compl. ¶ 24, ECF No.
12  1.) On December 23, 2013, at approximately 5:12 a.m., Plaintiff was out collecting
13  items for recycling near the intersection of 50th Street and El Cajon Boulevard in
14  San Diego, California. (*Id*. ¶ 38.) Earlier that morning, Plaintiff fought with her
15  boyfriend, forgot her glasses, broke her flashlight, and got lost in an unfamiliar part
16  of town. (*Id*.) Plaintiff admits she had used methamphetamine earlier that morning,
17  but claims she was aware of what was happening around her. (*Id*.)

18       At around the same time she was collecting items for recycling, Plaintiff
19  alleges that Hays—who was on duty in his SDPD uniform and driving a marked
20  patrol car—approached Plaintiff and asked her what she was doing. (Compl. ¶ 38.)
21  Plaintiff replied that she was collecting items for recycling and explained to Hays
22  what had happened to her earlier in the morning. (*Id*.) Hays offered Plaintiff a
23  courtesy ride home. (*Id*.) Plaintiff accepted the offer, and Hays drove her to the
24  address where she was staying. (*Id*.)

25
26
27  ───────────────
28       [1] All facts are taken from the Complaint. For these motions, the Court assumes all facts
alleged in the Complaint are true. *See, e.g.*, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38
(9th Cir. 1996).

Once they arrived at the address, Plaintiff exited the car, and Hays immediately informed her that he needed to search her. (Compl. ¶ 39.) Plaintiff consented to the search, despite Hays's lack of probable cause to conduct a search. (*Id*.) Hays, contrary to SDPD policy and procedure, did not then conduct a quick "pat down." (*Id*.) Rather, he allegedly touched Plaintiff "in a continuous motion," including "touching her breasts and vagina" and "lingering over every part of her body" for approximately three minutes (*Id*.)

Following the search, Hays remained in the driveway for approximately an hour and a half. (Compl. ¶ 40.) While in the driveway, Hays made various comments to Plaintiff, including questions about what color underwear she was wearing, racial comments about Plaintiff's Vietnamese boyfriend, and statements about his sexual preferences. (*Id*.)

Plaintiff alleges that she did not report the incident until she was contacted by SDPD detectives after January 1, 2014, because she feared no one would believe her.[2] (Compl. ¶ 40.) On February 9, 2014, the SDPD arrested Hays for crimes committed against various women while Hays was on duty as a police officer. *(Id.* ¶ 35.)* On February 18, 2014, the San Diego County District Attorney filed a criminal complaint against Hays, charging him with felonies and misdemeanors for the alleged crimes committed against Plaintiff and two other women while Hays was on duty. (*Id*.) Hays subsequently resigned from the SDPD on February 19, 2014. (*Id*.)

---

[2] Both the City and Hays request this Court take judicial notice of a Crime/Incident Report that they state Plaintiff filed with the SDPD on January 7, 2014. (City's Req. for Judicial Notice ("RJN") ¶ 5, Ex. 3, ECF No. 4-7; Hays's RJN ¶ 3, Ex. 3, ECF No. 14-6.) The court may take judicial notice of a fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Although the court "may take judicial notice of some public records," the contents of a police report have been held to not be the proper subject of judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985)) (holding that the existence and content of a police report are not properly the subject of judicial notice). Defendants have not demonstrated why the Court should depart from this rule in this case. (*See* City's RJN ¶ 5, Hays's RJN ¶ 3.) Therefore, the Court denies Defendants' requests to take judicial notice of the Crime/Incident Report.

On August 22, 2014, Hays pled guilty to one count of false imprisonment and two misdemeanor counts of assault under color of authority. (*Id*.)

Plaintiff alleges that Hays's actions on December 23, 2013, constitute a violation of her civil rights under the Fourth and Fourteenth Amendments of the U.S. Constitution. (Compl. ¶ 41.) Plaintiff also alleges that as a result of Hays's conduct on December 23, 2015, Plaintiff suffered injury, including mental and emotional distress, humiliation, anxiety, and physical pain and suffering. (*Id*. ¶ 42.)

### B.   *Monell* Allegations against the City

Plaintiff further alleges that Hays's conduct on December 23, 2013, was a direct result of the City's failure to properly train, screen, examine, supervise, and evaluate its police officers. (Compl. ¶ 46.) Part of the events that form the basis for Plaintiff's second cause of action began in 1994 when the SDPD employed former SDPD Officer Anthony Arevalos. (*Id*. ¶ 7.)

In 1999, a fellow SDPD officer witnessed Officer Arevalos sexually assault a young woman who was in a fragile mental state. (Compl. ¶ 9.) The officer reported the incident to his supervisors. (*Id*.) However, rather than report the incident up the SDPD chain of command, the supervisors destroyed photographs Officer Arevalos had taken during the sexual assault and other evidence of the incident. (*Id*.) After the 1999 incident, Officer Arevalos continued to target women and sexually assault them while on duty. (*Id*. ¶¶ 8–9.) Such misconduct included sexually assaulting women, engaging in sexual intercourse and/or oral copulation while in uniform in the back of a patrol car, soliciting sexual favors as bribes, and engaging in other forms of sexual misconduct. (*Id*. ¶ 8.) In addition, Officer Arevalos bragged about his sexual misconduct and showed photographs he took during the various incidents to fellow police officers and his supervisors. (*Id*.) In at least four incidents of sexual misconduct by Officer Arevalos, the victims came forward and reported the incident to the SDPD and its supervisory officials. (*Id*. ¶¶ 11–14.) Despite these reports from

1   four different victims, the SDPD never punished or disciplined Officer Arevalos.
2   (*Id*.)

3       In addition, during part of the time Officers Arevalos and Hays were
4   assaulting women, Plaintiff alleges that former SDPD Officer Kevin Hychko was
5   also assaulting and battering women under color of authority. (Compl. ¶ 15.) Officer
6   Hychko would perform traffic stops on attractive female drivers without probable
7   cause or reasonable suspicion and without properly notifying dispatch of such stops.
8   (*Id.*) Officer Hychko also targeted victims of domestic violence because their
9   vulnerability allowed him to make sexual advances toward them more easily. (*Id*.)
10  Furthermore, during this time in late 2012, Officer Hychko met an underage girl
11  while on duty and maintained an inappropriate relationship with her thereafter. (*Id*.
12  ¶ 17.) The SDPD was aware of Officer Hychko's misconduct, but allegedly chose
13  not to take any corrective action until the federal government publicly chastised the
14  SDPD and its command. (*Id*. ¶¶ 15, 17.) In 2014, former Chief of Police William
15  Landsdowne resigned under pressure, and the newly-appointed Chief Shelley
16  Zimmerman launched a confidential internal affairs investigation that resulted in the
17  termination of Officer Hychko. (*Id*. ¶ 18.)

18      Plaintiff alleges that the cover up of Officer Arevalos's criminal, sexual
19  misconduct in 1999 and the failure to investigate his later misconduct was part of a
20  long-standing "unwritten" policy within the SDPD that discouraged officers from
21  reporting instances of suspected or witnessed police misconduct to their supervisors
22  or to SDPD Internal Affairs. (Compl. ¶ 10.) Plaintiff asserts that this policy allowed
23  supervisors and officers to cover up and destroy evidence of officer misconduct.
24  (*Id*.)

25      Plaintiff further alleges that from 2003 to the present, the City and the SDPD
26  maintained "unwritten" policies that allowed SDPD officers to continue their
27
28

criminal misconduct without punishment. [3] (Compl. ¶¶ 19–22.) Plaintiff asserts that the City and the SDPD maintained these policies knowingly, with gross negligence, and with deliberate indifference for the constitutional rights of citizens. (*Id.* ¶ 22.)

Plaintiff also alleges that the City and the SDPD failed to properly test, screen, evaluate, or train officers before hiring them. (Compl. ¶ 26.) For example, Plaintiff alleges that Hays's field training officer recommended to the training sergeant at the police academy that Hays's performance at the academy was well-below average, that he was unfit to be a police officer, and that he should not be hired as a police officer. (*Id.* ¶ 25.) Despite this recommendation, the training sergeant hired Hays as a police officer after being pressured by Hays's father-in-law—a thirty-year veteran of the SDPD who leads the SDPD's Special Operations Unit and who inappropriately interfered with and influenced the decision to hire Hays. (*Id.*)

These policies, procedures, and customs underlie Plaintiff's *Monell* claim under 42 U.S.C. § 1983 against the City for failing to train, screen, test, evaluate, supervise, and examine officers and policies within the SDPD. (Compl. ¶ 46.) As a result of these policies, procedures, and customs, Plaintiff alleges the City deprived her of her constitutional rights under the Fourth and Fourteenth Amendments. (*Id.*)

## II.   **LEGAL STANDARD**

A motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe

---

[3] For example, Plaintiff alleges these policies include: (i) failing or refusing to adequately discipline police officers for acts of abuse and misconduct; (ii) failing or refusing to impartially investigate citizens' complaints of alleged abuse or misconduct by police officers; (iii) covering up acts of police officer misconduct or sanctioning a code of silence by police officers; (iv) failing and refusing to adequately supervise the actions of police officers; and (v) intentionally mischaracterizing and misidentifying complaints against police officers of misconduct. (Compl. ¶ 20.)

1  them and draw all reasonable inferences from them in favor of the non-moving party.

2  *Cahill*, 80 F.3d at 337–38. To avoid a Rule 12(b)(6) dismissal, a complaint need not

3  contain detailed factual allegations; rather, it must plead "enough facts to state a

4  claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

5  544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

6  content that allows the court to draw the reasonable inference that the defendant is

7  liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8  (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely

9  consistent with' a defendant's liability, it 'stops short of the line between possibility

10  and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

11      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

12  relief' requires more than labels and conclusions, and a formulaic recitation of the

13  elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in

14  original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not

15  accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the

16  court must pay to the plaintiff's allegations, it is not proper for the court to assume

17  that "the [plaintiff] can prove facts that it has not alleged or that the defendants have

18  violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors*

19  *of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

20      In ruling on a Rule 12(b)(6) motion, "a court may not look beyond the

21  complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

22  defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194,

23  1197 n.1 (9th Cir. 1998). Further, as a general rule, a court freely grants leave to

24  amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib.*

25  *Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave

26  to amend may be denied when "the court determines that the allegation of other facts

27  consistent with the challenged pleading could not possibly cure the deficiency."

28  *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320,

1   322 (9th Cir. 1962)).

2

3   **III.   <u>ANALYSIS</u>**

4   The City and Hays move to dismiss Plaintiff's 42 U.S.C. § 1983 claims on

5   statute of limitations grounds. (ECF Nos. 4, 14.) "A claim may be dismissed under

6   Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations

7   only when 'the running of the statute is apparent on the face of the complaint.'" *Von*

8   *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.

9   2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

10   "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff

11   can prove no set of facts that would establish the timeliness of the claim." *Id.*

12   (alteration in original) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d

13   1204, 1206 (9th Cir. 1995)).

14   Whether a claim under 42 U.S.C. § 1983 is timely depends on a combination

15   of state and federal law that determines (1) the length of the applicable limitations

16   period, (2) the accrual date of the claim, and (3) whether the limitations period was

17   tolled. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 387–88 (2007); *Lucchesi v. Bar-O*

18   *Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003). A combination of state and federal

19   law influences this inquiry because although 42 U.S.C. § 1983 provides for a federal

20   cause of action, "federal law looks to the law of the State in which the cause of action

21   arose" in several respects. *Wallace*, 549 U.S. at 387.

22   The first issue, the length of the statute of limitations, is determined by state

23   law. *Wallace*, 549 U.S. at 387. "It is that which the State provides for personal-injury

24   torts." *Id.* (citing *Owens v. Okure*, 488 U.S. 235, 249–250 (1989); *Wilson v. Garcia*,

25   471 U.S. 261, 279–280 (1985)). In California, the statute of limitations for personal

26   injury actions is two years. Cal. Code Civ. Proc. § 335.1. Thus, the statute of

27   limitations for a § 1983 claim arising in California is two years. *See Wallace*, 549

28   U.S. at 387; *see also, e.g.*, *Colony Cove Props., LLC v. City of Carson*, 640 F.3d

948, 956 (9th Cir. 2011) (applying California's two-year statute of limitations to §
1983 action).

The second issue, the accrual date, "is the date on which the statute of
limitations begins to run." *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1048 (9th
Cir. 2008). "[T]he accrual date of a § 1983 cause of action is a question of federal
law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388. Instead,
as with other aspects of § 1983 that "are not governed by reference to state law," the
court applies "federal rules conforming in general to common-law tort principles."
*Id.* "Under those principles, it is 'the standard rule that [accrual occurs] when the
plaintiff has "a complete and present cause of action,"' that is, when 'the plaintiff
can file suit and obtain relief.'" *Id.* (alteration in original) (citation omitted) (quoting
*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*,
522 U.S. 192, 201 (1997)).

The third issue, whether the limitations period was tolled for a § 1983 action,
is generally governed by state law. *See Bd. of Regents of Univ. of N.Y. v. Tomanio*,
446 U.S. 478, 485–86, n.6 (1980) (discussing New York's codified tolling rules for
the statute of limitations, such as tolling for infancy or imprisonment, in the context
of a § 1983 action); *Lucchesi*, 353 F.3d at 694 ("State law governs the statutes of
limitations for section 1983 actions as well as questions regarding the tolling of such
limitations periods.").

The Court analyzes these issues below to determine whether it is apparent
from the face of Plaintiff's Complaint that the statute of limitations has run on her
claims against Hays and the City.

### A.    Section 1983 Claim against Hays[4]

Plaintiff asserts a claim against Hays under 42 U.S.C. § 1983 for violations of her constitutional rights under the Fourth and Fourteenth Amendments. (Compl. ¶¶ 37–43.) Hays argues Plaintiff's claim is time barred by the statute of limitations because Plaintiff did not file her Complaint until more than two years after the date her claim accrued. (Hays's Mot. 4:23–27, ECF No. 14-1.)

The Court agrees. It is apparent from the face of Plaintiff's Complaint that her claim is time barred. Because Plaintiff's claim arose in California, she had two years from the date her § 1983 claim against Hays accrued to file her action. *See, e.g.*, *City of Carson*, 640 F.3d at 956. Plaintiff alleges Hays sexually battered her on December 23, 2013. (Compl. ¶¶ 38–40.) She knew on that date she had been injured and the cause of her injury—Hays's conduct. (*See id.*) Thus, under the federal accrual rule, Plaintiff's claim against Hays accrued on the same day. *See Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012). That is, she could then commence an action against Hays and obtain relief. *See Wallace*, 549 U.S. at 388. Yet, she filed her Complaint more than two years later on May 13, 2016. (ECF No. 1.) Consequently, Plaintiff's claim against Hays is time barred unless her allegations demonstrate the limitations period was tolled for a sufficient period to make her claim timely.

The Court pivots to California state law to determine whether the statute of limitations for Plaintiff's § 1983 claim was tolled. *See Tomanio*, 446 U.S. at 485–86; *Lucchesi*, 353 F.3d at 694. In her opposition, Plaintiff invokes one of California's tolling provisions, California Code of Civil Procedure Section 351. (Opp'n 1:23–

---

[4] Plaintiff brings her first claim under 42 U.S.C. § 1983 against both Hays and the City. (Compl. ¶¶ 37–43.) However, because (i) the City cannot be held liable on a theory of respondeat superior and (ii) this claim does not contain *Monell* allegations, Plaintiff's first claim against the City fails. *See Monell*, 436 U.S. at 691. Further, any amendment to this claim would be "futile." *See Newland v. Dalton*, 81 F.3d 904, 906–07 (9th Cir. 1996). Thus, dismissing Plaintiff's first claim against the City without leave to amend is appropriate. The City's potential liability under *Monell* is instead addressed in Section III.B below.

2:16, ECF No. 15.) This section provides that if a defendant leaves California "after the cause of action accrues," the defendant's "absence is not part of the time limited for the commencement of the action." Cal. Code Civ. Proc. § 351. Plaintiff alleges that Hays left California on June 17, 2015, and has since resided in Russellville, Arkansas. (Compl. ¶ 2.) Therefore, Plaintiff argues the statute of limitations has been tolled since June 17, 2015, and had not yet run when she filed her complaint on May 13, 2016. (Opp'n 2:10–16.)

The Court finds Plaintiff's tolling argument unavailing because applying California Code of Civil Procedure Section 351 in these circumstances would be unconstitutional. Various courts have declared this section unconstitutional as a violation of the Commerce Clause when applied in certain situations, particularly those involving out-of-state defendants or defendants who have permanently relocated to another state. *See, e.g.*, *Ross v. O'Neal*, 525 F. App'x 600, 601–02 (9th Cir. 2013) (applying *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 891 (1988), in holding that section 351 is unconstitutional when applied to a former NBA player who was employed by various out-of-state teams during the relevant time period); *Dan Clark Family Ltd. P'ship v. Miramontes*, 193 Cal. App. 4th 219, 234 (2011) (concluding the Commerce Clause precluded application of section 351 to nonresident defendants who resided in Mexico); *Heritage Mktg. and Ins. Servs., Inc. v. Chrustawka*, 160 Cal. App. 4th 754, 763–64 (2008) (holding that section 351's tolling provision violates the Commerce Clause as applied to defendants who move out of the state and establish a permanent residence in another state); *cf. State ex rel. Bloomquist v. Schneider*, 244 S.W.3d 139, 144 (Mo. 2008) (holding comparable state tolling provision is unconstitutional as applied to "persons who move their residence out of Missouri during the pendency of the statute of limitations").

//

//

In particular, the Court finds the California Court of Appeal's reasoning in *Heritage Marketing and Insurance Services, Inc. v. Chrustawka*, 160 Cal. App. 4th 754, 762–63 (2008), to be persuasive. There, in an issue of first impression for California courts, the court addressed the constitutionality of California Code of Civil Procedure Section 351 when applied to several defendants who were residents of California but then "moved to Texas and ha[d] lived there since." *Chrustawka*, 160 Cal. App. 4th at 758. After canvassing several decisions involving section 351 or comparable statutes in other jurisdictions, the court concluded applying section 351 to toll the statute of limitations would violate the Commerce Clause. *Id.* at 759–64. It reasoned:

> Section 351 penalizes people who move out of state by imposing a longer statute of limitations on them than on those who remain in the state. The commerce clause protects persons from such restraints on their movements across state lines. By creating disincentives to travel across state lines and imposing costs on those who wish to do so, the statute prevents or limits the exercise of the right to freedom of movement.

*Id.* at 763–64 (citations omitted). The court further reasoned that applying section 351 under the facts of the case "would impose an impermissible burden on interstate commerce as it would force defendants to choose between remaining residents of California until the limitations periods expired or moving out of state and forfeiting the limitations defense, thus 'remaining subject to suit in California in perpetuity.'" *Id.* at 764 (quoting *Abramson v. Brownstein*, 897 F.2d 389, 392 (9th Cir. 1990)). Thus, the court concluded section 351 did not apply, and the causes of action at issue were barred by the applicable statutes of limitations. *Id.*

Here, "beginning on or before June 17, 2015, Hays departed from California, began residing in Russellville, Arkansas, and has continued to reside there ever since." (Compl. ¶ 2.) Similar to the defendants in *Chrustawka* who had moved to Texas and resided there since, "[a]pplying section 351 under the facts of this case would impose an impermissible burden on interstate commerce as it would force

– 12 –

1   [Hays] to choose between remaining [a] resident[ ] of California until the limitations
2   period[ ] expired or moving out of state and forfeiting the limitations defense, thus
3   'remaining subject to suit in California in perpetuity.'" *See Chrustawka*, 160 Cal.
4   App. 4th at 764 (quoting *Abramson*, 897 F.2d at 392). Consequently, applying
5   section 351 would be unconstitutional in these circumstances. *See id.* at 764.

6          Moreover, although Plaintiff relies on *Maurer v. Individually & as Members*
7   *of Los Angeles County Sheriff's Department*, 691 F.2d 434, 436–37 (9th Cir. 1982),
8   that decision does not compel a different conclusion. Although the court in *Maurer*
9   reasoned section 351 could apply to toll a claim under 42 U.S.C. § 1983, it is unclear
10  whether the defendants in *Maurer* had moved and taken up residence in another
11  state, whereas here Plaintiff alleges Hays now resides in Arkansas. *See Maurer*, 691
12  F.2d at 436–37. More importantly, *Maurer* predates (1) the Supreme Court's
13  decision in *Bendix*, 486 U.S. 888, which held a tolling provision that hinged on
14  whether the defendant was present in the state violated the Commerce Clause, and
15  (2) the Ninth Circuit's subsequent decision in *Abramson v. Brownstein*, 897 F.2d
16  389 (9th Cir. 1990), which held section 351 violated the Commerce Clause when
17  applied to the facts of that case. *See also Ross*, 525 F. App'x at 601–02. Hence, the
18  Court finds *Maurer* is inapposite.

19         Plaintiff also cites to *Dew v. Appleberry*, 23 Cal. 3d 630 (1979), in her
20  Opposition. There, the plaintiff relied on California Code of Civil Procedure Section
21  351 because the defendant "had been absent from California for five weeks" during
22  the limitations period. *Dew*, 23 Cal. 3d at 633. Thus, unlike the authority discussed
23  above, this decision did not specifically address a defendant who had moved to
24  another jurisdiction to reside there. *See id.* It also, like *Maurer*, predates subsequent
25  federal and California authority that had the advantage of the Supreme Court's
26  decision in *Bendix*, 486 U.S. 888. Therefore, the Court finds this decision is
27  distinguishable from the present case.
28  //

                                      – 13 –                           16cv1161

Plaintiff does not advance any other tolling argument in her opposition. Accordingly, because Plaintiff commenced her action against Hays more than two years after her claim accrued, and because her allegations do not establish the statute of limitations for her claim was tolled, her claim is time barred and subject to dismissal.

That said, the Court will grant Plaintiff leave to amend her claim. "[W]hen a viable case may be pled, a district court should freely grant leave to amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)). It is possible that Plaintiff could plausibly plead the application of one of California's tolling doctrines or statutory provisions to toll the statute of limitations to make her claim against Hays timely. Moreover, Plaintiff has not previously amended her Complaint. Therefore, the Court will grant Plaintiff leave to amend her first claim against Hays. *See* Fed. R. Civ. P. 15(a).

## B.    *Monell* Claim against the City[5]

Plaintiff also brings a claim against the City under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (Compl. ¶¶ 44–47.) Similar to Hays's attack on Plaintiff's individual claim, the City argues Plaintiff's *Monell* claim should be dismissed because it is time barred by the two-year statute of limitations. (City's Mot. 1:2–15, ECF No. 4.) The City further argues Plaintiff's allegations do not demonstrate delayed accrual of her *Monell* claim or that the statute of limitations was tolled. (*Id.* 3:6–17:9.)

//

---

[5] Plaintiff brings her second claim under 42 U.S.C. § 1983 and *Monell* against both the City and Hays. (Compl. ¶¶ 44–47.) However, because Hays is an individual, *Monell* is inapplicable, and Plaintiff's second claim against Hays fails. *See Monell*, 436 U.S. at 691. Further, any amendment to this claim would be "futile." *See Newland*, 81 F.3d at 906–07. Thus, dismissing Plaintiff's second claim against Hays without leave to amend is appropriate.

The Court's resolution of the City's motion depends on whether Plaintiff may proceed on a theory that her *Monell* claim accrued at a later date than her individual claim against Hays. As mentioned above, federal law governs the accrual date of Plaintiff's *Monell* claim. *See, e.g.*, *Wallace*, 549 U.S. at 388. The court considers "federal rules conforming in general to common-law tort principles." *Id.* "The general common law principle is that a cause of action accrues when 'the plaintiff knows or has reason to know of the injury.'" *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)). The Ninth Circuit has "interpreted the 'question . . . [of] what . . . we mean by injury' with some flexibility, and held that a 'claim accrues' not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" *Id.* (alterations in original) (quoting *Lukovsky*, 535 F.3d at 1050).

To this Court's knowledge, the Ninth Circuit has not addressed specifically when a *Monell* claim under 42 U.S.C. § 1983 accrues. *See Matheny v. Clackamas Cty.*, No. 3:10-CV-1574-BR, 2012 WL 171015, at *4 (D. Or. Jan. 20, 2012) ("[T]he Ninth Circuit has not specifically addressed the issue of claims accrual in the context of a *Monell* claim."). In general, "[r]elatively few decisions have given serious consideration to the accrual of § 1983 municipal and supervisory liability claims." *Martin A. Schwartz, Section 1983 Litigation Claims & Defenses* § 12.03 (2017). Several district courts in the Ninth Circuit, however, have encountered the issue. *See Doe v. City of Eugene*, No. 6:15-CV-00154-JR, 2016 WL 1385450, at *1 (D. Or. Apr. 6, 2016); *Matheny*, 2012 WL 171015, at *4; *Temple v. Adams*, No. CV-F04-6716 OWW DLB, 2006 WL 2454275, at *10 (E.D. Cal. Aug. 23, 2006). These courts have relied on the accrual analysis for a *Monell* claim from *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995). In *Pinaud*, the Second Circuit reasoned that because "an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's 'policy or

custom,' a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" 52 F.3d at 1157; *see also id.* at 1157 n.17 ("The issue before us, instead, is precisely that of when [the plaintiff] knew or should have known enough to claim the existence of a 'policy or custom' so that he could sue the County."); *but see Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (disagreeing with *Pinaud* in summary disposition and noting "a § 1983 cause of action accrues when 'the plaintiff becomes aware that [he] is suffering from a wrong for which damages may be recovered in a civil action.'" (alteration in original) (quoting *Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir. 1994))).

In addition to these decisions, which discussed *Monell* specifically, the Ninth Circuit's decision in *Bonneau v. Centennial School District No. 28J*, 666 F.3d 577, 581–82 (9th Cir. 2012), indicates it is possible for a plaintiff to plead delayed accrual of a § 1983 claim. There, the 34 year-old plaintiff alleged he experienced physical and emotional injuries when he was beaten by teachers while he was an elementary school student from 1986 to 1988. *Id.* at 579. The Ninth Circuit addressed the plaintiff's argument "that accrual of his claims should be delayed because he repressed memories of the beatings." *Id.* at 580. Although the court ultimately found the plaintiff had not alleged sufficient facts to support delayed accrual of his claim, the court's reasoning indicates that a plaintiff, with sufficient facts, could allege delayed accrual based on being unaware of an injury or cause of the injury. *See id.* at 581.

Against this backdrop, the Court concludes it is possible for Plaintiff to proceed on a theory of delayed accrual of her *Monell* claim. In applying the federal accrual rule, the injury underlying Plaintiff's *Monell* claim is the same as her claim against Hays. This alleged injury occurred on December 23, 2013, when Hays sexually battered Plaintiff. (Compl. ¶¶ 38–40.) But "a 'claim accrues' not just when

the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and **the cause of that injury**.'" *See Bonneau*, 666 F.3d at 582 (emphasis added) (quoting *Lukovsky*, 535 F.3d at 1050). For Plaintiff's *Monell* claim, the cause of her injury is the City's alleged wrongful policies. *See Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011). The City "may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the [City] can be shown to be a moving force behind a violation of constitutional rights." *Id.* at 900 (citing *Monell*, 436 U.S. at 694). Thus, to establish the City is liable under *Monell*, Plaintiff must prove: "(1) that [she] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to [her] constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Id.* (second alteration in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997)). Consequently, there can be no liability unless the City had a policy that was the "moving force" behind the violation of Plaintiff's constitutional rights. *See id.* at 900–01 It follows that Plaintiff's claim accrued when she "knew or in the exercise of reasonable diligence should have known" of not only her injury, but also the City's alleged wrongful policies—the cause of her injury for her *Monell* claim. *See Bonneau*, 666 F.3d at 582.

As for when Plaintiff discovered the cause of her injury, Plaintiff alleges that she "did not know . . . until April 2016, the City and the SDPD had engaged in the practices or committed the failures" underlying her *Monell* claim. (Compl. ¶ 36.) Plaintiff claims her "living conditions at the time of the assault not only made her very vulnerable to Hays's exploitation, but also made it impossible for her to learn any facts giving rise to the *Monell* claim." (*Id.*) "[S]he was homeless and financially destitute at the time, and had no meaningful access to any public records or media that would have provided her any such information." (*Id.*) Further, although she

cooperated with "SDPD and District Attorney detectives and investigators," Plaintiff alleges "none of the detectives, lawyers, advocates, or other members of the prosecution team provided any information to [Plaintiff] that would have led a reasonable person to suspect the facts giving rise to the *Monell* allegations in this complaint." (*Id.*) Rather, Plaintiff alleges the "SDPD and District Attorney detectives . . . discouraged her from pursuing legal action against Hays and the City." (*Id.*) In addition, for the third officer involved in Plaintiff's *Monell* allegations, Officer Hychko, Plaintiff alleges when the new Chief of Police took over in 2014, the investigation that resulted in the officer's termination was confidential and conducted "out of the media's and the public's eyes." (*Id.* ¶ 18.) When Plaintiff's allegations are accepted as true and all reasonable inferences from the allegations are drawn in favor of Plaintiff, the Court concludes Plaintiff has sufficiently pled delayed accrual of her *Monell* claim against the City.

The arguments raised by the City in response to Plaintiff's delayed accrual theory highlight the fact that Plaintiff knew Hays had injured her. (*See* Reply 9:7–23, ECF No. 6.) Thus, the City argues she "knew of her injury and who caused her injury." (*Id.* 9:7.) Yet, as discussed above, whether Plaintiff simply knew Hays "caused her injury" does not resolve the issue of when her *Monell* claim accrued. Further, to the extent the City disagrees with Plaintiff's factual allegations regarding the accrual of her *Monell* claim, including that she was not aware of the basis for the claim until many months later, the City may investigate these allegations in discovery and challenge them appropriately—including by bringing a motion for summary judgment to pierce Plaintiff's pleadings and again assert the statute of limitations.

In sum, the Court concludes dismissing Plaintiff's *Monell* claim against the City on statute of limitations grounds is not appropriate.

//

//

## IV.    <u>CONCLUSION</u>

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** the City's motion to dismiss (ECF No. 4). Specifically, the Court dismisses Plaintiff's first claim against the City without leave to amend but denies the City's request to dismiss Plaintiff's second claim.

In addition, the Court **GRANTS** Hays's motion to dismiss (ECF No. 14). The Court dismisses Plaintiff's first claim against Hays with leave to amend and dismisses Plaintiff's second claim against Hays without leave to amend. If Plaintiff chooses to file a First Amended Complaint, she must do so no later than **January 27, 2017**.

**IT IS SO ORDERED.**

DATED:  January 13, 2017

Hon. Cynthia Bashant
United States District Judge

16cv1161